UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER RHODES,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Case No. 3:26-CV-5290-TMC<br><br>ORDER GRANTING MOTION TO DISMISS |

## I. INTRODUCTION

This action arises out of Plaintiff Jennifer Rhodes's contraction of syphilis. Ms. Rhodes brings a negligence claim against the United States of America for failure to notify her of exposure to syphilis, failure to follow infectious disease protocols, failure to warn her of foreseeable harm, failure to provide timely treatment, and failure to document and communicate medical information. Dkt. 14 ¶¶ 19–21.

On June 16, the United States moved to dismiss Rhodes's complaint, arguing that (1) her claims are untimely and (2) she fails to state a claim for negligence. Dkt. 19. For the following reasons, the motion to dismiss is GRANTED.

## II. BACKGROUND

Rhodes alleges that in 2016, her then-husband received medical treatment for syphilis at the Madigan Army Medical Center's Infectious Disease Clinic. Dkt. 14 ¶ 8. She further alleges that "[f]ederal medical personnel at Madigan failed to notify" her of her potential exposure. *Id.* ¶¶ 9–10. She remained "untreated and unaware of her infection for nearly a year." *Id.* ¶ 11. She was first diagnosed with syphilis on April 14, 2017, at which point she had "progressed to late-stage syphilis." *Id.* ¶¶ 12, 14. Subsequent laboratory testing showed a positive response to treatment. *Id.* ¶¶ 13–14. She alleges she "suffered significant physical, neurological, emotional, and psychological harm" from her delayed treatment. *Id.* ¶ 15. In 2025, she learned "she will test positive for syphilis for life" and that "she has been permanently banned from donating plasma and blood," which has caused her "humiliation and emotional harm." *Id.* ¶ 16; Dkt. 20 at 2, 7.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

A Rule 12(b)(1) motion seeks dismissal of a claim for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Such challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* Where, as here, the Court responds to a facial attack, the Court will resolve the challenge "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Id.*

**B. Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss, the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party," *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) (citation omitted), but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted).

## IV. DISCUSSION

**A. Rhodes's negligence claim is untimely under the Federal Tort Claims Act.**

The United States argues that Rhodes's negligence claim is untimely under Section 2401(b) of the Federal Tort Claims Act ("FTCA"), which bars tort claims against the United States unless such claims are "presented in writing to the appropriate Federal agency within two years after such claim accrues." Dkt. 19 at 4. The United States argues Rhodes's tort claim accrued in 2017, when she was diagnosed with syphilis and learned that her then-husband had transmitted syphilis to her. Dkt. 19 at 6. Rhodes argues that her claim accrued in 2025, when she

"discovered for the first time that her condition was permanent, ongoing, and life-altering." Dkt. 20 at 2, 7.

As an initial matter, Section 2401(b)'s statute of limitations is not jurisdictional. *United States v. Wong*, 575 U.S. 402, 411–12 (2015). Therefore, the Court considers the United States' statute of limitations defense under Rule 12(b)(6), rather than Rule 12(b)(1). *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013). "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion . . . when the running of the statute [of limitations] is apparent on the face of the complaint.'" *Holt v. County of Orange*, 91 F.4th 1013, 1017 (9th Cir. 2024) (quoting *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)).

Under Ninth Circuit law, "a cause of action for medical malpractice accrues under the FTCA on the date when the plaintiff discovers the injury and its cause." *Raddatz v. United States*, 750 F.2d 791, 795 (9th Cir. 1984) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)). Accrual does not "await awareness by the plaintiff that his injury was negligently inflicted." *Kubrick*, 444 U.S. at 123. Rather, once a plaintiff knows of an injury and who inflicted it, the plaintiff has "the duty to start investigating the legal liability of the defendant." *Raddatz*, 750 F.2d at 796. Thus, a plaintiff's later discovery that a known injury resulted from negligence does not restart the limitations period. *Kubrick*, 444 U.S. at 123.

A different rule applies when "a failure to diagnose, warn, or treat a patient" allows a "pre-existing injury" to develop "into a more serious condition." *Raddatz*, 750 F.4th at 796. In such circumstances, "the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient," but rather "the *development* of the problem into a more serious condition [that] poses greater danger to the patient or . . . requires more extensive treatment." *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)

(emphasis in original). Accordingly, the claim accrues "when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action" accrues. *Id.*

The Ninth Circuit further explained this rule in *McGraw v. United States*, 281 F.3d 997 (9th Cir. 2002), *opinion amended and superseded*, 298 F.3d 754 (9th Cir. 2002), brought by a plaintiff on behalf of her late father. There, Navy physicians failed to identify a suspicious growth in the plaintiff's father's lung and told him that his lung was normal and that he did not need follow-up care. *Id.* at 1000. Two years later, he was diagnosed with terminal lung cancer that had metastasized. *Id.* The government argued that, under *Augustine*, accrual triggers "whenever the plaintiff learns of a serious health condition, no matter where on the spectrum of gravity the condition may be at the point of her discovery." *Id.* at 1002 (quotation modified). The Ninth Circuit rejected this interpretation of *Augustine*, explaining that "[u]nder the government's reading, the mere knowledge of a worsening medical condition would put the plaintiff on constructive notice that he had a pre-existing condition, thereby compelling him to undertake an immediate investigation to determine if the condition developed because of failure to diagnose." *Id.* It held that "an FTCA plaintiff asserting a failure-to-diagnose claim must know or have reason to know of a pre-existing condition before the accrual clock begins to run." *Id.* at 1003. Therefore, McGraw's claim was timely because, despite knowing of her father's worsening symptoms, she did not know or have reason to know that his cancer developed from a pre-existing lung condition that Navy physicians had failed to diagnose until she obtained his medical records and had them reviewed by experts. *Id.* at 1003–04.

The Ninth Circuit more recently applied these principles in *Harrison v. United States*, No. 22-15038, 2023 WL 5318336 (9th Cir. Aug. 18, 2023), a case involving an eighty-day delay in prescribing antibiotics. There, although the plaintiff knew of the delay more than two years

before filing his claim, he alleged the delay caused his ear infection to become antibiotic-resistant and his eardrum to collapse—developments he discovered within the limitations period. *Id.* at *1. The Court held that the allegations were sufficient to establish that the plaintiff's claim accrued within the limitations period. *Id.*

Here, Rhodes argues her claim accrued in 2025, when she first learned her injury was permanent and she cannot donate plasma and blood. Dkt. 14 ¶ 16; Dkt. 20 at 2. But under *Kubrick*, 444 U.S. 111, accrual does not await discovery of the full extent of an injury or knowledge that a defendant's conduct was negligent. *Id.* at 123; *Ashley v. United States*, 413 F.2d 490, 493 (9th Cir. 1969). It begins when the plaintiff knows, or reasonably should know, of the injury and its cause. *Kubrick*, 444 U.S. at 122. Thus, Rhodes's later discovery of additional consequences of her infection—including its permanence and the resulting inability to donate blood or plasma—which she could have reasonably discovered through due diligence following her 2017 diagnosis, does not, standing alone, establish that her claim accrued in 2025. The amended complaint does not allege that Rhodes's condition worsened after 2017 or identify when Rhodes first knew or had reason to know that her infection resulted from the government's alleged failure to notify her of her husband's diagnosis. *See Augustine*, 704 F.2d at 1078–79; *McGraw*, 281 F.3d at 1001–04. Rhodes's 2017 diagnosis and knowledge that the infection was transmitted by her husband triggered "the duty to start investigating the legal liability of the defendant." *Raddatz*, 750 F.2d at 796. Therefore, Rhodes's assertion that she did not discover the permanence and full extent of her injuries until 2025, without more, does not establish that her claim accrued at that time.

Because Rhodes's claim was not filed within the FTCA statute of limitations, and this defect could not be cured by the allegation of other facts, the Court GRANTS the government's motion to dismiss the case with prejudice.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the United States's motion to dismiss. Dkt. 19. The case is dismissed WITH PREJUDICE. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 13th day of November, 2026.

Tiffany M. Cartwright
United States District Judge